Ronald E. Coleman, J.
The Jafco Realty Corporation owned about 10 acres of land in the City of Buffalo with 608 feet frontage on the Niagara River. On the premises there were various buildings and slips for boats and there was conducted thereon a marine business which included the mooring of boats, storage of boats, a repair shop, salesrooms and a restaurant and bar business. Entrance to the marine base was from Niagara Street and the claimant owned land fronting on Niagara Street 30 feet in width and 135 in depth used for that purpose. In addition, it was necessary to pass over lands owned by the City of Buffalo being formerly part of the abandoned Erie Canal, which land was between claimant’s property fronting on Niagara Street and the marine base property located on the Niagara River. In 1945 the City of Buffalo gave and granted to John A. Frauenheim, and his grantees, an easement in and license to use as a right of way a strip of land across the abandoned canal being 15 feet in width and 150 feet in depth for access to and from the marine property. By subsequent conveyances, this easement became the property of the claimant herein. Under the terms of the easement, claimant had the right to use the same upon the payment of certain rentals each year for so long as there was no other access available to the marine base. Claimant paid the rentals and there was no other access available to its property.
By Map No. 601-A, Parcel No. 6 C 1, the State of New York appropriated in fee land owned by the City of Buffalo consisting of the abandoned Erie Canal, for the purpose of constructing the Niagara section of the New York Thruway. The map was filed in the County Clerk’s office of Erie County on January 3, 1957 and by filing the said map, the State appropriated in fee the only means of access to claimant’s marine base. However, the map contained the following reservation: “ reserving also, unto John A. Frauenheim (reputed owner) permitte of the said City of Buffalo, these rights under permits granted by the said *331 City of Buffalo, Nov. 21, 1945 and filed in Erie County Clerk’s Office in Liber 3802, Page 197, providing the exercise of these rights, does not, in the opinion of the Superintendent of Public Works of the Chairman of the Thruway Authority, as the case may be, acting in the best interests of the People of the State of New York, interfere in any way with the Public use hereinbefore described. ’ ’
The claimant contended that the appropriation of the fee to its easement with the reservation above, impaired if not destroyed, the right of access to its property with the result that the remaining property owned by it had suffered consequential damages. The State offered no proof, however the Assistant Attorney-General informed the court that the State agreed with the before value of the property of $475,000 placed on it by one of claimant’s witnesses. Following the trial, the court held a further hearing and at that time gave to the State an opportunity to make application to reopen the claim for the purpose of submitting proof on value. The State thereafter elected to rest on the claimant’s proof.
Claimant contended that the reservation contained in the appropriation map failed to give to it a continued use of its only means of access and that it would have difficulty satisfying a prospective purchaser and the title insurers of any prospective purchaser of a continued and uninterrupted access to its property. With this, we agree. (Robinson v. State of New York 3 A D 2d 326, 330.)
The State appropriated in fee the former Erie Canal land “ without the right of access to and from abutting property, by appropriation, for purposes connected with the Thruway system ”, (Map No. 601-A, Parcel No. 6 C 1.) It is apparent from a reading of the map that the land was taken for the purpose of constructing thereon a section of the Thruway which the State proceeded to do, with the part constructed to date on claimant’s easement being elevated. Claimant is presently using the easement for access to its remaining property. The State as fee owner under the appropriation has the right here to bar the claimant from using it for such access. It may do so simply by the Superintendent of Public Works or the Chairman of the Thruway Authority determining that in his opinion, the use being made by the claimant interferes with the use for which the State made the appropriation. The State gave the court no further aid in determining what was intended by the appropriation and the reservation. If the State intended to leave to the claimant an unrestricted right to access to its property, it could have done so without any question by giving to the claimant the *332 same rights it had under the grant from the City of Buffalo without attaching to it any further restrictions. (Spinner v. State of New York, 4 A D 2d 987; Morton v. State of New York, 8 A D 2d 49, 52, appeal dismissed 6 N Y 2d 993.)
What claimant’s rights were then would have been unmistakably clear and if it later became necessary to make further use of this property the State could have appropriated claimant’s easement by filing. another map. And in the event the State did, claimant then would have a claim against the State at that time for the appropriation of the right of way over which its access to its remaining property depended. Under the reservation, claimant’s access to its remaining property may be terminated at any time and if this were done, claimant would have no further claim. This fact affects the value of claimant’s property remaining after the appropriation. Accordingly, claimant is entitled to have all its damages assessed in this claim regardless of the fact that it presently is using the right of way, taking into consideration the full legal effect of the reservation in accordance with the language used therein by the State itself.
As the State submitted no evidence on the trial concerning the extent of its reservation, we must determine damages based on what the State has the right to do under the appropriation considering the reservation therein and the proof as made by the claimant. Under the appropriation herein, the rights of the State are unlimited.
The State has appropriated claimant’s right of access and it may continue to use the same only so long as the State allows it to do so. Claimant’s remaining property has suffered consequential damages as result of the appropriation.
As the State offered no evidence as to the value of claimant’s property before or after the appropriation, we are left only with the proof as made by the claimant. Further, considering the fact that the State declined to make proof on value when offered the opportunity to do so following the trial, the court would not be justified in disregarding the proof as made by claimant. At the time of the appropriation herein the fair and reasonable market value of claimant’s property was $475,000 and immediately after the appropriation was $100,000. Accordingly, an award of $375,000 is made claimant herein for property taken and consequential damages to the remainder, with interest thereon from January 3,1957 to July 3,1957 and from April 14, 1959 to the date of entry of judgment herein. All motions made on the trial are denied with an exception granted to the party aggrieved.